UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | No.   22-cr-082 (JMC) |
| **CHRISTOPHER W. ORTIZ** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Christopher Ortiz, by his attorney, Maria N. Jacob, hereby submits the following memorandum in aid of sentencing in this matter.

Mr. Ortiz is a young twenty-nine year old man with no criminal history. On January 6, 2021, Mr. Ortiz did not engage in any violence, destruction of property, and is sincerely remorseful for his conduct. He submitted to an interview with the FBI pursuant to his plea agreement where he gave an honest account of his conduct. Based on all of the factors discussed below, Mr. Ortiz respectfully requests that the Court impose a sentence of 12 months' probation with the conditions that he serve the first two months on home detention and complete 60 hours of community service.

## BACKGROUND

On March 24, 2022, Mr. Ortiz entered a guilty plea to one count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 USC §5104(e)(2)(G), for his participation in the events on January 6, 2021. On that day, he attended the "Save America" rally where he listened to several speeches

1

encouraging the crowd to march to the Capitol to "stand up for this country and stand up for what is right.[1]" After the rally, Mr. Ortiz, along with thousands of other individuals attending the rally, walked over to the Capitol building and entered inside. While inside, Mr. Ortiz was not violent, did not destroy property, and did not enter any sensitive areas.

## ARGUMENT

### I. Legal Standard

The Court is well aware that the Supreme Court's opinions in *Kimbrough v. United States*, 552 U.S. 84 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), have dramatically altered the law of federal sentencing. Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a). Those factors include (a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational and vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a).

---

[1] *See* Matthew Choi, *Trump is on trial for inciting an insurrection. What about the 12 people who spoke before him?*, Politico (Feb. 10, 2021), available at https://www.politico.com/news/2021/02/10/trump-impeachement-stop-the-steal-speakers-467554.

II. **Imposing a Sentence of 12 Months' Probation With Two Months' Home Detention is Sufficient, But Not Greater Than Necessary, to Comply with 18.U.S.C. §3553(a).**

a. **Mr. Ortiz's Personal History and Characteristics**

Mr. Ortiz was born and raised in New York, where he still currently resides with his parents who have been married for 33 years. Mr. Ortiz grew up in a middle class family among one other sibling, a younger sister. Mr. Ortiz's father is retired after spending his career serving New York working in bridges and tunnels through the Metropolitan Transportation Authority. He was working during 9/11 where he observed firsthand the tragic terrorist attack that wreaked havoc upon the city. As a result of his observations that day, he still suffers from Post-Traumatic Stress Disorder. Unfortunately, Mr. Ortiz recalls that his father would sometimes lash out on the family as a result of his memories that had a long lasting effect on him. Given their often tumultuous relationship, Mr. Ortiz has had a better relationship with his mother, who is also now retired and worked as a respiratory therapist at the Veteran Affairs Medical Center.

During high school, Mr. Ortiz played the French horn in the marching band and he also ran track. He unfortunately had a hard time living up to his parent's expectations of him and only later enrolled in college to please their wishes. Mr. Ortiz has always been close to his sister, who describes him as "loving, caring, passionate, hardworking, patriotic, and has integrity." *See* PSR Par. 36. After high school, Mr. Ortiz followed his passion of photography and is now a freelance production assistant.

### b. Nature and Circumstances of the Offense

When Mr. Ortiz decided to make the spontaneous decision to attend the rally in DC on January 6, 2021, he was not part of any organized group, and did not engage in any pre-planning. His main motivation, which he acknowledges was very short sighted and immature, was to photograph the events. As a part of the millennial generation where influencers get ahead, Mr. Ortiz believed that his participation could somehow benefit him in his career. When Republican leader after leader, including the former President, encouraged the crowd to go down to the Capitol building, Mr. Ortiz did what the rest of the crowd (mostly men and women older than him) did, and marched to the Capitol building. He took out his professional grade camera and took several videos and photographs. He did not engage in violence, steal anything, or destroy property. Mr. Ortiz acknowledges that a time when the crowd was extremely riled up, that he shined a light in the direction of officers.[2] He regrets this very much. Mr. Ortiz explains that at that moment, the crowd learned that an officer shot and killed Ashli Babbit. The crowd reacted, and he joined them believing he was acting in solidarity with the crowd. His actions reflect an individual who behaved immaturely and did not grasp the severity of what he was doing and what he was observing.

After being arrested for the instant offense, Mr. Ortiz voluntarily gave law enforcement his cell phone. He also entered a plea and accepted responsibility and

---

[2] The defense recommendation of 2 months of home confinement reflects that he acknowledges the severity of this behavior.

did not hide behind his actions. He gave an interview with the FBI pursuant to his plea agreement where he honestly told them what he saw and did that day. Although Mr. Ortiz made some immature comments on social media the days after January 6, 2021, he has now distanced himself from that behavior and is completely focused on his work.

### c. The Need to Promote Respect for the Law, Provide Just Punishment, Protect the Community and Provide Adequate Deterrence, and the Need to Avoid Unwanted Sentencing Disparities

Based on Mr. Ortiz's personal history and characteristics, it is clear that his conduct on January 6, 2021, was an isolated event that was completely out his character. It is also extremely unlikely that he will recidivate given his lack of criminal history and his record on pre-trial supervision for the past year and a half. Any potential for recidivism can be addressed by imposing home confinement and community service, a more effective method of deterrence than a period of incarceration, especially for a young man such as Mr. Ortiz. A shorter sentence of probation would also reflect the fact that Mr. Ortiz has already served over a year on supervision, unlike some of the cases that have gone before him where higher sentences of probation were imposed.

A sentence of probation would also be consistent with past similar sentences imposed. Although there is no case identical to Mr. Ortiz's case, this matter is similar to *United States v. Jacob Wiedrich,* 1-21-CR-581 (TFH), where the Court imposed 36 months' probation with 3 months' home detention in addition to 100 hours community service. Similar to Mr. Ortiz, Mr. Wiedrich was a young man who

behaved immaturely on January 6, 2021. Also similar to Mr. Ortiz, Mr. Wiedrich distanced himself from the events shortly after January 6, 2021, and did generally well on his pre-trial supervision leading up to his sincere guilty plea. After the court balanced the 3553(a) factors in the Wiedrich case, it ultimately decided that a term of incarceration would not be productive. Similarly, here, a sentence of incarceration would be counterproductive as Mr. Ortiz has finally advanced in his plans of entrepreneurship, which by itself will keep him motivated, focused, and out of trouble. Community service will result in Mr. Ortiz giving back to the community, a much more productive activity than serving jail time.

The instant matter is also similar to *United States v. Jordan Stotts*, 21-CR-272 (TJK), where the court sentenced the defendant to 24 months' probation with 2 months' home detention. Although Stotts allegedly shouted at police, scaled the wall to gain access to the Capitol, and made a few post January 6, 2021 statements on social media, he also accepted responsibility early and cooperated with law enforcement. Similar to Stotts, Mr. Ortiz accepted responsibility in his case, cooperated with law enforcement, and after reflection of his actions ceased his posts on social media and rather focused on his personal growth.

Lastly, general deterrence would be served by a probationary sentence with home detention and community service for a petty offense. With the advancements in social media and particular media scrutiny surrounding the January 6 cases, the whole world has already seen the harsh collateral consequences that have resulted for similarly situated misdemeanants.

## **CONCLUSION**

For the reasons stated above, Mr. Ortiz respectfully requests that the Court impose 12 months' probation with the condition that he serve the first two months on home detention and complete 60 hours of community service. Mr. Ortiz also requests that a fine not be imposed in light of his obligation to pay $500 restitution.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Maria N. Jacob
Assistant Federal Public Defender
625 Indiana Ave. NW, Ste. 550
Washington, D.C. 20004
(202) 208-7500
Maria_jacob@fd.org