**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:22-cr-00082 (JMC)** |
| **v.** | : | |
| | : | |
| **CHRISTOPHER W. ORTIZ,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S REPLY TO DEFENDANT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this reply to defendant Christopher W. Ortiz's sentencing memorandum (ECF No. 37).  For the reasons set forth herein, the sentence requested by the defendant – 12 months' probation with the first two months on home detention and 60 hours of community service – is not sufficient in light of the nature and circumstances of the offense, the need to afford adequate deterrence of criminal conduct, and the defendant's continued attempts to downplay his culpability.  As explained more fully in the government's sentencing memorandum (ECF No. 38), the sentence requested by the government – *i.e.*, 5 months' incarceration, 36 months' probation, 60 hours of community service, and $500 restitution – is necessary to give effect to the sentencing factors set forth in 18 U.S.C. § 3553(a).

**INTRODUCTION**

The defendant's sentencing memorandum is most notable for what the defendant still refuses to acknowledge: that he used physical force while inside the Capitol Building, even though video evidence shows him pushing against other rioters as officers were attempting to clear the area (*see* Exs. 2, 3, 8[1]); and that he still tries to deflect responsibility and blame anything and

---

[1]     Government Exhibits 1 through 7 were lodged with the Court on July 26, 2022.  (*See* ECF No. 39.)  Government Exhibits 8 and 9 are side-by-side video exhibits created from Exhibits 2-3

anyone for the conduct he does acknowledge.  At one point, the defendant even purports to "explain[]" his decision to shine a strobe flashlight at the officers who were defending the Capitol against the violent attacks of rioters near the Lower West Terrace tunnel as an act of "solidarity" with a crowd that was responding to the news of a rioter's death.  (*See* ECF No. 37 at 4).  The defendant's troubling unwillingness to accept responsibility for choices that were entirely his own underscores the need for a substantial term of incarceration.  His attempt to analogize his case to the sentences imposed in *United States v. Jacob Wiedrich*, 1-21-cr-581 (TFH), and *United States v. Jordan Stotts*, 1:21-cr-272 (TJK), is meritless.

## I.      The Defendant Continues to Downplay His Conduct On January 6, 2021, and Still Tries to Blame Others for the Conduct He Does Acknowledge

Although the defendant has accepted responsibility for aspects of his conduct on January 6, 2021, his sentencing memorandum reveals a troubling unwillingness to acknowledge the full scope of his criminal conduct.  In his memorandum, the defendant twice claims that he "did not engage in violence."  (ECF No. 37, at 1, 4).  Elsewhere, he states that "[w]hile inside" the Capitol Building, the defendant "was not violent."  (*Id.* at 2).  These statements are, at best, inaccurate.  As the government explained in its sentencing memorandum, at approximately 3:23 p.m., before the defendant went to the Lower West Terrace, the defendant reentered the Capitol Building for a third time through the Rotunda Doors.  Once inside, the defendant joined a large group of rioters who were congregating outside the Rotunda.  When several rioters ahead of the defendant started resisting officers' efforts to clear that area, the defendant pressed forward and pushed against those rioters:

and Exhibits 6-7, respectively.  Government Exhibits 8 and 9 have been lodged with the Court via USAfx, and a corresponding notice is being filed in the docket contemporaneously with this memorandum.



*See* Ex. 8 (3:24:20 p.m. – 3:24:35 p.m.); Ex. 2 (same); Ex. 3 (same).  Seconds later, as the rioters'
efforts were failing, the defendant turned back and gestured in the direction of the rioters behind
him to press forward, in an apparent plea for them to join in resisting the officers:



*Ibid.*  At a bare minimum, this video evidence casts serious doubt on the defendant's claims that
"[w]hile inside, [he] was not violent" (ECF No. 37 at 2) and "did not engage in any violence" (*id.*
at 1).

    The defendant's unwillingness to take full responsibility for his conduct near the Lower
West Terrace tunnel is also troubling.  Although the defendant acknowledges participating in the
January 6, 2021, attack and "shin[ing] a light in the direction of officers" (ECF No. 37 at 4), in his
sentencing memorandum, he suggests that factors other than his own deliberate choices are also to
blame.  He characterizes himself as a "young man" (*id.* at 1, 4), even though he was 27 years old
when he decided to join the attack on the Capitol on January 6, 2021.  And he downplays his
responsibility for deliberately and repeatedly shining a strobe flashlight at the officers who

engaged in a fierce battle with rioters as something that happened "when the crowd was extremely riled up" because a rioter had died inside the building and as something that the defendant did "believing he was acting in solidarity with the crowd." (*Id.*)

The defendant's equivocations are indefensible.  On January 6, 2021, Christopher Ortiz was an adult man in his late 20s.  Christopher Ortiz *chose* to participate in the storming of the Capitol.  Nor was he a mere follower, contrary to his suggestion in his sentencing memorandum. In fact, in his interview with the FBI, the defendant admitted that he rushed toward the Capitol precisely so he could get there ahead of the large crowd.  Once at the Capitol, he saw firsthand that the protest had turned violent.  Yet he celebrated the rioters' progress and unlawfully entered the building shortly after the Parliamentarian Door was first breached.  He entered and exited the Capitol Building on three different occasions.  He chose to join in resisting (albeit briefly) the officers who were attempting to clear the area near the Rotunda Doors.  And he chose to shine a strobe flashlight in the direction of the officers near the Lower West Terrace tunnel.  In fact, the defendant admitted in his FBI interview that he knew all along that his strobe flashlight could be used as a combat tool.  (*See* ECF No. 23 n.5).[2]  Against this constellation of evidence, the defendant's suggestion that he attempted to blind the officers near the Lower West Terrace tunnel in "solidarity with the crowd" because "an officer shot and killed Ashli Babbit" rings hollow.  The defendant deliberately joined a violent attack on the Capitol and on the officers tasked with protecting it.  He just refuses to accept full responsibility for what he did.

---

[2]      In his FBI interview, the defendant claimed that he brought the flashlight to Washington, D.C. as "deterrent in case he was assaulted at night." (*Ibid.*)

## II.      A Substantial Term of Incarceration Is Warranted to Avoid Sentencing Disparities

The defendant also suggests (ECF No. 37 at 5-6) that a probationary sentence with two months' home detention would be "consistent with past similar sentences imposed."  In fact, neither of the two cases the defendant cites is comparable.  In *United States v. Jacob Wiedrich*, 1:21-CR-581 (TFH) (cited at 5-6), the Court imposed 36 months' probation with 3 months' home detention and 100 hours of community service.  But while Wiedrich engaged in criminal conduct, the defendant's conduct in this case is substantially more serious.  Wiedrich did not enter and exit the Capitol Building at three different locations on three different occasions within the span of one hour.  Nor did Wiedrich shine a strobe flashlight in the eyes of the officers who were defending the Lower West Terrace tunnel in the midst of a medieval assault by rioters.  On the contrary, Christopher Ortiz did that, and later boasted that he "literally blinded the cops as the proud boys kicked in the door."

The defendant's reliance on *United States v. Jordan Stotts*, 21-CR-272 (TJK), is equally inapposite.  There is no dispute that Stotts engaged in serious criminal conduct: he was in the Capitol Building for approximately one hour, watched other rioters push against officers to enter, and screamed at law enforcement officers as they cleared the Rotunda.  For that conduct, Stotts received a sentence of 36 months' probation, with three months of home detention, and 60 hours of community service.  But, again, Ortiz's conduct on January 6, 2021 – especially after he positioned himself near the Lower West Terrace tunnel – is on an entirely different level.  Whereas Stotts screamed at officers, Ortiz took affirmative steps to blind law enforcement officers as they were battling the rioters in one of the most violent confrontations that occurred on January 6, 2021.  That conduct brings this case in line with the cases discussed in the government's sentencing

memorandum – especially *United States v. Honeycutt*, No. 22-cr-50 (CJN).  As in *Honeycutt*, the defendant in this case should receive a substantial sentence of incarceration.

## CONCLUSION

For the reasons set forth above and in the government's sentencing memorandum (ECF No. 38), the government recommends that this Court sentence the defendant to 5 months' of incarceration, 36 months of probation, 60 hours of community service, and $500 in restitution.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   /s/ Francesco Valentini
FRANCESCO VALENTINI
D.C. Bar No. 986769
Trial Attorney
United States Department of Justice, Criminal Division
Detailed to the D.C. United States Attorney's Office
601 D Street NW
Washington, D.C. 20530
(202) 598-2337
francesco.valentini@usdoj.gov